IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GEORGE ALEXANDER YARID,
Plaintiff,

v.                                                    Civil Action No. 3:17-cv-484

OCWEN LOAN SERVICING, LLC, *et al.*,
Defendants.

## OPINION

The pro se plaintiff, George A. Yarid, brings this action arising from the foreclosure of

his home. The complaint names as defendants Ocwen Loan Servicing, LLC ("Ocwen"), The

Bank of New York Mellon ("BNY")[1], and Equity Trustees, LLC ("Equity Trustees"). Yarid's

five counts include: (1) declaratory relief; (2) violation of the Fair Debt Collection Practices Act

("FDCPA"); (3) violation of the Truth in Lending Act ("TILA"); (4) violation of the Real Estate

Settlement Procedures Act ("RESPA"); and (5) unjust enrichment. He seeks damages and

injunctive relief. The defendants have moved to dismiss the case.

Yarid's complaint runs into a number of legal problems. The first problem arises under

the doctrine of standing—the requirement that the plaintiff show that he has the legal right to

seek judicial relief. Yarid filed for bankruptcy before the foreclosure of his home. When he did

so, his claims became the property of his trustee in bankruptcy. Therefore, only the trustee—not

Yarid—can pursue any claims that arose before or during his bankruptcy; Yarid lacks standing to

pursue such claims. Yarid has standing only to sue for claims that arose after his bankruptcy

ended. Yarid has not pled facts showing standing to support his claims in part of Count Two and

---

[1] As relevant here, the Bank's true name is The Bank of New York Mellon, f/k/a The Bank of
New York as successor in interest to JPMorgan Chase Bank, N.A. as Trustee for NovaStar
Mortgage Funding Trust, Series 2005-4, NovaStar Home Equity Asset-Backed Certificates,
Series 2005-4.

in all of Counts Four and Five. The Court will grant Yarid leave to file an amended complaint within twenty-one days to allege facts establishing his claims arose after his bankruptcy. Since Yarid's complaint shows conclusively that he cannot establish standing to pursue Count Three, the Court will dismiss it without leave to amend.

Yarid runs into other problems with respect to Count One, his claim for declaratory relief. This claim deals with events that have already happened and cannot be reversed, so the Court will dismiss this claim as moot.[2]

The Court doubts that Yarid can ultimately establish claims for violations of the FDCPA under Count Two. Nevertheless, construing the complaint liberally, it is conceivable that Yarid has alleged facts amounting to limited violations of the FDCPA, and the Court will allow part of Yarid's FDCPA claims to proceed.

## I. FACTS

In 2005, Yarid purchased his home (the "Property") with a mortgage from NovaStar Mortgage, Inc. Novastar assigned the Deed of Trust to BNY in 2012, with Ocwen as the loan servicer. BNY appointed Equity Trustees as Substitute Trustee on May 8, 2017.

Although Yarid claims he had not defaulted "to the point that foreclosure [was] legally authorized" (Compl., Dk. No. 12, at ¶ 11), he does admit that he failed to pay his mortgage under the terms of the note. Yarid fell behind on mortgage payments in 2009, procured a loan modification in 2015, but then fell behind sometime later. Despite his delinquency, Yarid nonetheless says that Ocwen and BNY failed to establish any legal authority to foreclose on his house. He also claims that Ocwen and BNY "falsely threate[ne]d legal action when [they] claimed a right to foreclosure and failed to inform Plaintiff that he was lawful." (Compl., Dk.

---

[2] Yarid mentions Equity Trustees only in Count One. Since the Court dismisses Count One as moot, Equity Trustees will be dismissed completely from this case.

No. 12, at ¶ 26.)  According to the complaint, Ocwen and BNY's representatives also misled Yarid by telling him there was no foreclosure until mere weeks before they sent a foreclosure notice.  When Yarid called about the notice, Ocwen and BNY denied "[the foreclosure sale]." (Opp'n, Dk. No. 26, at ¶ 1.)  Ocwen and BNY further misled Yarid "for years" by returning his loan payments months after he had sent them, which led Yarid to believe that his loan was in good standing.  Additionally, Yarid sent three Qualified Written Requests ("QWRs") to Ocwen in 2013, 2014, and 2015 to identify who owned his loan, but Ocwen never responded.  Finally, Yarid says that Ocwen accepted Yarid's partial mortgage payments but failed to apply them to his mortgage account, and also collected fees from his monthly payments that Yarid did not actually owe.

Yarid filed for bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Virginia on October 13, 2016.  (Case No. 3:16–BK–35047–KRH.)  The Bankruptcy Court discharged Yarid's bankruptcy and closed his case on April 10, 2017.

## II. STANDARD

A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the evidentiary merits of the claims.  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).  The principle that a court must accept all allegations as true, however, does not apply to legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face.  *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).[3]

Finally, in cases where the plaintiff appears pro se, courts do not expect the plaintiff to frame legal issues with the clarity and precision expected from lawyers. Accordingly, courts construe pro se complaints liberally. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts do not, however, need to discern the unexpressed intent of the plaintiff or conjure up issues on the plaintiff's behalf. *See Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006); *Beaudett*, 775 F.2d at 1276.

### III. <u>DISCUSSION</u>

#### *A. Standing*

Before addressing the merits of the various counts, the Court will determine Yarid's standing to pursue them.

Standing "is a threshold jurisdictional question," which ensures that a suit is "appropriate for the exercise of the courts' judicial powers." *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001). If a plaintiff does not have standing, federal courts lack subject matter jurisdiction. *AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 F. App'x 244, 247 (4th Cir. 2006) (unpublished). The plaintiff bears the burden to demonstrate standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). *See also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) ("The plaintiff has the burden of proving that subject matter jurisdiction exists."). As

---

[3] A motion to dismiss for lack of subject matter jurisdiction arises under Rule 12(b)(1), but at this stage in this case, the same standard applies: Yarid must allege jurisdictional facts. *Griffin v. Dept. of Labor Fed. Credit Union*, 293 F. Supp. 3d 576, 578 (E.D. Va. 2018) (case dismissed because plaintiff did not allege facts showing standing).

a threshold matter, therefore, Yarid must allege facts demonstrating that he has standing to bring his claims.

When a person declares bankruptcy, his assets become part of bankruptcy estate, and fall under the control of the trustee in bankruptcy. The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The bankruptcy estate also includes "any interest in property that the estate acquires after the commencement of the case." *Id.* § 541(a)(7). The "property" of the estate includes legal claims and causes of action. *Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d 507, 512 (4th Cir. 2005). This means that, in this case, any claims Yarid had when he filed for bankruptcy, and any claims that arose while he was in bankruptcy, belong to the estate.

Upon the filing of a bankruptcy petition, the debtor relinquishes control over the estate, including all existing and potential legal claims, to the bankruptcy trustee. *Haydu v. Tidewater Cmty. Coll.*, 268 F. Supp. 3d 843, 846 (E.D. Va. 2017). Accordingly, the trustee alone has standing to pursue claims that belong to the bankruptcy estate. *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999). A debtor may pursue claims that belong to the bankruptcy estate only if the trustee abandons them pursuant to 11 U.S.C. § 554. *See Canterbury v. J.P. Morgan Acquisition Corp.*, 958 F. Supp. 2d 637, 649–50 (W.D. Va. 2013). If the debtor fails to disclose a claim, it remains part of the bankruptcy estate even after the bankruptcy case has closed, and the trustee's failure to pursue the nondisclosed claim does not constitute abandonment by the trustee. *See* 11 U.S.C. § 554(d); *Canterbury*, 958 F. Supp. 2d at 649–50; *Labgold v. Regenhardt*, 573 B.R. 645, 649 (E.D. Va. 2017).

A different rule applies after the bankruptcy case ends. If a person's claim arises after his bankruptcy, he can pursue it because the bankruptcy estate only controls claims that arose before or during the bankruptcy.

In other words, Yarid can only assert claims for violations that occurred after his bankruptcy ended; the rest of his claims belong to his bankruptcy estate, and only the bankruptcy trustee can assert them.

In this case, there is a very short window between the close of Yarid's bankruptcy and the filing of this Complaint. Yarid's bankruptcy case closed on April 10, 2017. He filed this suit on July 5, 2017. To have standing, he must allege that the defendants wronged him between April 10 and July 5, 2017.

### 1. *Declaratory Relief*

In Count One, Yarid seeks injunctive and declaratory relief for the foreclosure sale on July 7, 2017. This claim arises after the bankruptcy case, so Yarid has standing to bring this claim. Unfortunately for Yarid, as discussed below, this claim is moot.

### 2. *FDCPA*

In Count Two, Yarid claims Ocwen and BNY violated the FDCPA when they (1) falsely claimed a right to foreclose, (2) misled Yarid by asserting there was no foreclosure until approximately one week before the scheduled sale, and (3) misled Yarid "for years" by returning mortgage payments months after he made them. The first two claims arose after the bankruptcy, so Yarid has standing to bring them.

As to the third claim, Yarid does not say when the misrepresentations by returned payments occurred, so it remains unclear whether this claim belongs to the bankruptcy estate. Yarid thus fails to meet his burden of demonstrating standing. The Court dismisses claim three

of Count Two, but will allow Yarid to file an amended complaint stating the dates of the misrepresentations in the third claim. If the misrepresentations occurred before the close of bankruptcy, Yarid lacks standing. Yarid's amended complaint must state the dates of the misrepresentations by returned payments, or this claim will be dismissed.

### 3. *TILA*

In Count Three, Yarid claims Ocwen violated TILA when it failed to respond to the three QWRs that he sent in 2013, 2014, and 2015. This claim predates the bankruptcy, and it therefore belongs to the bankruptcy estate. Yarid lacks standing to pursue this claim, and the Court dismisses Count Three without leave to amend.

### 4. *RESPA*

In Count Four, Yarid claims Ocwen violated RESPA when it (1) failed to respond to the three QWRs sent in 2013, 2014, and 2015, and (2) failed to apply payments to his mortgage account and collected unauthorized fees. The first claim predates the bankruptcy, and Yarid therefore lacks standing. Yarid does not provide dates for the second claim, and he therefore fails to satisfy his burden of demonstrating standing. The Court dismisses Count Four, but will allow Yarid to file an amended complaint that shows that the failure to apply payments occurred after his bankruptcy case ended. Again, Yarid must give the dates Ocwen failed to apply the payments to his debt.

### 5. *Unjust Enrichment*

In Count Five, Yarid claims that Ocwen failed to apply payments to his mortgage account and collected unauthorized fees, which caused unjust enrichment. Yarid does not provide dates for this conduct, and he therefore fails to satisfy his burden of demonstrating standing. The Court dismisses Count Five with leave to amend to provide specific dates of the alleged conduct.

If Count Five arose before the close of bankruptcy, Yarid lacks standing to bring this claim. Yarid's amended complaint must specify the dates Ocwen misapplied his payments.

## B. The Sufficiency of the Claims

Because Yarid lacks standing for a portion of Count Two and all of Counts Three through Five, the Court lacks jurisdiction to consider those claims on the merits. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."); *Carroll v. ABNB Fed. Credit Union*, No. 2:17–cv–521, 2018 WL 1180317, at *4 (E.D. Va. Mar. 5, 2018) (holding that the plaintiff lacked standing and that the court therefore lacked jurisdiction to decide the case on the merits). If Yarid amends his complaint to establish standing, the Court will consider whether he has alleged a valid claim on the merits in the amended counts.

At this point, the Court must now consider Count One, and the remaining portions of Count Two, on the merits.

### 1. Declaratory Relief

Yarid seeks declaratory as well as injunctive relief to establish that he is the lawful owner of the Property. These requests both fail. A foreclosure sale occurred on July 7, 2017, which renders Yarid's request for injunctive relief moot. Additionally, declaratory relief is inappropriate after a foreclosure sale has already occurred. *See e.g.*, *Suggs v. M & T Bank*, 230 F. Supp. 3d 458, 465 (E.D. Va. 2017) (citing *Tapia v. U.S. Bank*, 718 F. Supp. 2d 689, 695–96 (E.D. Va. 2010)); *Horvath v. Bank of New York*, No. 1:09–cv–01129, 2010 WL 538039, at *1

(E.D. Va. Jan. 29, 2010) ("Declaratory relief is reserved for forward looking actions . . . .").
Because Count One is moot, the Court dismisses Count One with prejudice as to all defendants.

## 2. *FDCPA*

As discussed above, Yarid has standing to pursue the following alleged FDCPA violations: (1) Ocwen and BNY falsely claimed a right to foreclose, and (2) Ocwen and BNY's representatives misled Yarid as to his foreclosure status by telling him there was no foreclosure until weeks before the sale. Although Yarid fails to cite a specific provision of the FDCPA, he likely refers to 15 U.S.C. § 1692e, which prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e(2)(A) prohibits false representations of the "character, amount, or legal status of any debt," while § 1692e(5) prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

To establish an FDCPA violation, the plaintiff must prove that (1) the plaintiff encountered collection activity arising from consumer debt, (2) the defendant is a debt collector under the FDCPA, and (3) the defendant committed an act or omission that violates the FDCPA. *Ruggia v. Washington Mut.*, 719 F. Supp. 2d 642, 647 (E.D. Va. 2010), *aff'd*, 442 F. App'x 816 (4th Cir. 2011) (per curiam). Under the first element, foreclosure proceedings are a method of consumer debt collection. *See Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) ("We see no reason to make an exception to the [FDCPA] when the debt collector uses foreclosure instead of other methods.").

Under the second element, the FDCPA defines "debt collector" as: (1) a person whose *principal purpose* is to collect debts; (2) a person who *regularly* collects debts *owed to another*; or (3) a person who collects *its own debts*, using *a name other than its own* as if it were a debt

collector." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016), *aff'd*, 137 S. Ct. 1718 (2017) (emphasis in original). Generally, "creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Scott v. Wells Fargo Home Mortg.*, 326 F.Supp.2d 709, 717–18 (E.D.Va. 2003); *accord Ruggia*, 719 F. Supp. 2d at 647–48.

It is likely that Ocwen and BNY are not debt collectors, but deciding whether an entity qualifies as a debt collector involves a fact-intensive process. Banks and servicers can become debt collectors when they acquire debt already in default. *See Klar v. Fed. Nat. Mortg. Ass'n*, No. 3:13CV00462-JAG, 2014 WL 412533, at *7 (E.D. Va. Feb. 3, 2014); *see also Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013) (classifying Ocwen as a debt collector under the FDCPA when Ocwen acquired a loan that was already in default). Here, Yarid admits that he fell behind in his mortgage payments in 2009. BNY acquired the loan in 2012, which makes it plausible that Ocwen and BNY acquired a loan already in default and are, therefore, debt collectors. Yarid therefore survives the second element.

Assuming that Ocwen and BNY are debt collectors, the Court must now decide whether Yarid has alleged that they violated the FDCPA under the third element. First, Yarid does not plead a sufficient claim based on the false right to foreclose. Yarid admits that he fell behind on mortgage payments and provides no other facts that suggest Ocwen and BNY lacked a legal right to foreclose. The Court dismisses this portion of Count Two with leave to amend.

Second, Yarid sufficiently pleads an FDCPA claim based on Ocwen and BNY's misleading statements. Yarid claims Ocwen and BNY misled him as to his foreclosure status by telling him that there would be no foreclosure until approximately one week before they scheduled the foreclosure sale, and then denying the foreclosure again over the phone after they

sent Yarid notice of the sale. In essence, Yarid claims that Ocwen and BNY intentionally lied to him about his foreclosure status. These facts state a plausible violation of 15 U.S.C. § 1692e(2)(A), which prohibits debt collectors from making false representations as to the legal status of any debt. The Court denies the motion to dismiss as to this portion of Count Two.

## IV. **CONCLUSION**

For the reasons stated above, the Court grants Equity Trustees' motion to dismiss with prejudice. The Court grants in part Ocwen and BNY's motion to dismiss, dismissing Count One with prejudice and dismissing claims one and three of Count Two, and all of Counts Three, Four, and Five without prejudice. The Court denies Ocwen and BNY's motion to dismiss as to claim two of Count Two. The Court will give Yarid twenty-one (21) days leave to amend his complaint to cure the deficiencies described in Counts Two through Five.

The Court shall enter an appropriate order.

Let the Clerk send a copy of this Opinion to the pro se plaintiff via U.S. Mail and to all counsel of record.

Date: July 3(, 2018
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge